**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DENISE F. COOL,

       Plaintiff,

  -vs-               No. 6:13-CV-218

CAROLYN W. COLVIN,
Commissioner of Social Security,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Thomas J. McAvoy,**
**Senior United States District Judge**

## DECISION and ORDER

    Plaintiff brought this action under § 205(g) and § 1631(c)(3) of the Social Security

Act, codified as 42 U.S.C. § 405(g) and § 1383(c)(3), to review a final determination of

the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for

Social Security Disability benefits and Supplemental Security Income benefits. Before the

Court is Plaintiff's motion for judgment on the administrative record and pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The parties have

submitted briefing and evidence on the issues raised in Plaintiff's motion.

**I.  Facts**

   **a.  Procedural History**

    Dennise F. Cool ("Plaintiff") filed an application for Social Security Disability benefits

1

and Supplemental Security Income benefits with a protective filing date of September 3, 2009, alleging disability beginning January 29, 2008, due to mid-carpal instability in her right hand, cervical spine degeneration, numbness in her left hand, and pain in her neck. See Administrative Transcript ("T"), dkt. # 9 at 156–67, 209.  Her application was denied on November 25, 2009.  T at 63–64.  On January 22, 2010, Plaintiff timely requested a hearing with an Administrative Law Judge ("ALJ").  T at 80–82.  A video hearing took place before ALJ Elizabeth W. Koennecke on January 27, 2011.  T at 45–62.  Information from a Vocational Expert ("VE") was obtained after the hearing date, and a supplemental hearing was held on September 2, 2011 so that Plaintiff's counsel could question VE Esperanza Distefano.  T at 31–44.

The ALJ issued an unfavorable decision dated October 24, 2011.  T at 13–30.  On December 2, 2011, Plaintiff requested review of the ALJ's decision.  T at 12.  On December 26, 2012, the Appeals Council denied the request.  T at 1–6.  Upon this denial, the Plaintiff filed the instant action.  See Complaint, dkt. # 1.

**b. Medical History**

On February 20, 2008, Plaintiff reported right arm pain after an alleged fall at work on January 29, 2008, and was treated by John B. Ayres, M.D.  T at 330–31.  Dr. Ayres noted that Plaintiff may have suffered a bone injury to her wrist and recommended a nerve conduction study and an MRI.  T at 331.  Dr. Ayres also noted that Plaintiff was unable to work until the studies were completed.  Id.  On March 26, 2008, Plaintiff underwent a nerve conduction test and the results were normal.  T at 323.

From April 9, 2008 to May 9, 2008, Plaintiff attended physical therapy for her right

2

wrist.  T at 334–45.

On April 23, 2008, Plaintiff saw Dr. Ayres for continued right arm pain.  T at 325–26. The doctor noted that Plaintiff had pain on the ulnar side of her wrist and that she might have a triangular fibrocartilage ligament.  T at 325.  Dr. Ayres further noted that Plaintiff was taping her wrist which seemed to stabilize it.  Id.  He recommended that Plaintiff continue physical therapy for her wrist and start therapy for her shoulder.  Id.

On May 28, 2008, Jonathan Richman, M.D., noted a possible triangular fibrocartilage complex tear in Plaintiff's right wrist.  T at 338.

On June 10, 2008, W. David Ferraraccio, M.D., performed an orthopedic evaluation on Plaintiff.  T at 342-45.  The doctor noted that Plaintiff had decreased palmar flexion in her right wrist.  T at 344.  He also noted that Plaintiff's elbow and AC joint by her shoulder were tender.  Id.  He diagnosed Plaintiff with probable low-grade impingement syndrome in her right shoulder, contusion at the right elbow, right wrist pain with a possible Triangular fibrocartilage complex (TFCC) injury, and possible right carpal tunnel.  Id.  He assessed Plaintiff as having a moderate to marked level of causally related disability.  T at 345.

On August 29, 2008, Dr. Louis A. DiGiovanni, M.D., a treating physician, examined Plaintiff.  T at 256–58.  Plaintiff reported her pain severity as a six out of ten during the day, and a ten out of ten at night.  T at 256.  The doctor assessed Plaintiff with sprains, strains, and likely TFCC in her right wrist.  T at 257.  Plaintiff requested an injection in her right wrist.  Id.  The doctor completed a Workers' Compensation form and stated that Plaintiff was totally disabled from regular work duties.  T at 258.

On September 30, 2008, Dr. DiGiovanni treated Plaintiff for her right wrist pain.  T at 259–61.  Plaintiff received a right wrist arthrogram and an injection into the right wrist joint at the ulnar fibrocartilage region.  T at 261.

On October 29, 2008, Plaintiff saw Dr. DiGiovanni again for her right wrist pain.  T at 262–64.  Plaintiff reported that the injection relieved her pain for a few days; however, the pain returned after she lifted a cup of coffee.  T at 263.

On November 25, 2008, Carl J. Spivak, M.D., consultatively examined Plaintiff.  T at 258–60.  Plaintiff reported headaches, neck pain, right shoulder pain, and right wrist pain, and stated that nothing relieved her pain.  T at 358.  The doctor noted that Plaintiff was tender on her occipital nerves bilaterally, midlines lower cervical spine, right parasacpular area, and right shoulder apex.  T at 359.  He assessed that Plaintiff had cervical spondylosis and bilateral occipital neuralgia.  Id.  Plaintiff stated that she wanted to try injections again.  Id.

On December 11, 2008, Plaintiff saw Dr. Ayres for continued pain.  T at 498.  The Plaintiff reported that she had burns on her left hand from touching a hot plate, and that she did not feel the burning.  Id.

On January 8, 2009, Dr. Spivak performed bilateral occipital nerve steroid blocks and a cervical epidural steroid block on Plaintiff.  T at 292–93.

On January 27, 2009, Dr. Spivak again treated Plaintiff.  T at 355.  Plaintiff reported that the injections did not provide her with any pain relief.  Id.  The doctor noted that Plaintiff 's occipital nerves and midline cervical were still very tender.  Id.

On February 2, 2009, Margaret A. Miller, D.C., a treating Chiropractor, saw Plaintiff.

4

T 267–69.  The doctor noted that Plaintiff had loss of cervical curve and mild degenerative changes at C5 and C6, and diagnosed her as having "C/S" subluxation and brachial neuritis or radiculitis.  T at 269.  The doctor submitted a progress report to the Workers' Compensation Board that indicated that Plaintiff was temporarily completely impaired and could not return to work due to severe pain.  T at 380–82.  Dr. Miller submitted similar reports with the same findings on July 6, 2009, August 6, 2009, September 3, 2009, October 6, 2009, November 12, 2009, and December 7, 2009.  T at 364–79, 585–92.

On February 17, 2009, Dr. Richard Whipple, M.D., noted a chronic strain in Plaintiff's right wrist.  T at 271.

On July 22, 2009, Dr. Ayres treated Plaintiff for right wrist and right should pain.  T at 362.  He noted that Plaintiff's shoulder was still "bothering her quite a bit on the right side when she elevates."  Id.

On August 19, 2009, Dr. Ayres treated plaintiff for continued pain.  T at 363.  He noted that X-rays of Plaintiff's neck "show significant degenerative disease of C5-C6 and C6-C7."  Id.  The hospital record of the X-Ray reports minimal degenerative change in the cervical spine.  T at 274.

On October 6, 2009, Kevin J. Setter, M.D., treated Plaintiff.  T at 394.  He noted that Plaintiff could not return to normal activities because she was completely impaired by her wrist pain.  Id.

On November 6, 2009, Shehzad Ali, M.D., performed an internal medicine examination on Plaintiff.  T at 296–300.  The doctor noted that Plaintiff's cervical spine forward flexion was limited to 20 degrees, her lateral flexion was limited to 10 degrees,

and extension was limited to 15 degrees.  T at 298.  He also noted a paraspinal muscle spasm in the cervical region bilaterally, which was worse on the left side.  Id.  He noted that her right wrist dorisflexion was limited to 40 degrees, and her palmar felxion was limited to 50 degrees.  T at 298–99.  The doctor diagnosed Plaintiff with right hand pain and wrist pain, right carpal tunnel syndrome, neck pain with occipital neuralgia, cervical spondylosis, and degenerative joint disease at C5-C6 cervical spine.  T at 299.  He recommended that Plaintiff avoid using her right hand for zipping, buttoning and tying shoes, and avoid doing computer work due to her neck pain.  T at 300.

On November 10, 2009, Dr. David Ferraraccio, M.D., measured the range of motion in her wrist, finding dorsiflexion at 53 degrees on the right, compared to 77 degrees on the left, and palmar flexion at 49 degrees on the right, compared to 74 degrees on the left.  T at 344.

On October 6, 2010, Dr. Setter performed an arthroscopy, TFCC debridement, and injection on Plaintiff's right wrist.  T at 518.  A week later, the doctor noted that Plaintiff was doing "absolutely fantastic with regard to her right wrist and pain."  Id.

On January 28, 2010, Vincent V. Sportelli, D.C., performed an Independent Medical Examination of Plaintiff.  T at 403-06.  He reported that her cervical compression and distraction tests were positive.  T at 405.  He also noted that Plaintiff's cervical range of motion was limited to 25 degrees in flexion, and 15 degrees in extension. T at 404. He further noted that testing caused Plaintiff pain and discomfort in the cervicothoracic area. Id.  Furthermore, he found that Plaintiff had decreased range of motion in her right shoulder as compared to the left in flexion, extension, abduction and adduction.  Id.  He

diagnosed Plaintiff with "cervicothoracic sprain/strain with myalgia," cervical radiculitis, and "right cervical brachial syndrome with cervical disc syndrome C6-7 on the right." T at 405. Dr. Sportelli consequently found that Plaintiff was moderately to markedly disabled. Id.

On February 9, 2010, Darlene Euler, D.C., submitted a progress report to the Workers' Compensation Board and stated that Plaintiff was completely temporarily impaired and could not return to work due to severe pain. T at 459–62.

On April 12, 2010, Dr. Ayres treated Plaintiff for continued neck and right arm pain. T at 481. He noted that Plaintiff remained completely disabled. T at 481.

On May 26, 2010, Plaintiff saw Dr. Ayres again for continued pain. T at 479. Plaintiff reported pain from her neck to the tips of her fingers. Id. She also reported tingling into her fingers on the left wrist, similar to the pain she experiences on the right. Id. The doctor found that Plaintiff seemed uncomfortable and frustrated during her examination. Id.

On June 21, 2010, Plaintiff underwent an MRI which indicated a disc bulge at C5-6, but no nerve root compression. T at 409.

On July 14, 2010, Dr. Setter performed surgery on Plaintiff's right shoulder after diagnosing her with pain, impingement, acromioclavicular arthritis, adhesive capsulitits and a superior labral tear, all in her right shoulder. T at 522.

On October 6, 2010, Dr. Setter again performed surgery on Plaintiff. T at 415. He reported that Plaintiff had a central TFCC tear, "significant synovisits and dorsal capsulitis in the radiocarpal joint as well as a significant amount of synovisits within the intercarpal joint." Id.

7

On October 14, 2010, Dr. Setter treated Plaintiff.  T at 518.  Plaintiff reported that she believed that she hit her left wrist in the initial fall, and that she was starting to notice the pain more now that her right wrist was feeling better.  Id.  Dr. Setter therefore believed that her left wrist pain was casually related to the fall.  Id.

On October 22, 2010, Gerald A. Coniglio, M.D., performed an Independent Medical Examination on Plaintiff, pursuant to her Workers' Compensation claim.  T at 421-32.  He noted well-healed arthroscopic puncture wounds and no atrophy of the shoulders.  T at 426.  The doctor noted that Plaintiff's cervical range of motion included: flexion at 35 degrees, extension at 30 degrees, right lateral rotation at 60 degrees, and left lateral rotation at 50 degrees.  T at 425.  He also found a decreased range of motion in Plaintiff's right wrist, and noted that the dorsiflexion and volar flexion were both 70 degrees.  T at 427.  He further noted that Plaintiff's right and left wrists had a "positive Phalen's test . . . which produces numbness and tingling in the right thumb and little finger."  T at 427–28.  The doctor also noted that Plaintiff had "a Tinel's which begins in the ulnar cubital groove and proceeds down the inside of the forearm to the right little finger and right finger. She [had] decreased sensation beginning just distal to the ulnar cubital groove proceeding distally to the ulnar side of the hand."  T at 427.   He therefore diagnosed Plaintiff with "sprain/stain syndrome of cervical spine," "right ulnar cubital nerve entrapment syndrome at the elbow," and "left wrist cubital tunnel syndrome."  T at 431. He found that Plaintiff had the following work restrictions:

> Lifting: Up to 5 pounds with the right hand and raise it from floor to tabletop level. She cannot carry 5 pounds greater than 10 feet. She may work with the right arm above shoulder level. She may push, pull, turn, twist, with a force up to 10 pounds occasionally with the right arm. She can do repetitive

work approximately 5 minutes with the right hand or wrist and then must rest for 10 minutes. She cannot restrain uncooperative clients. These restrictions refer both to the claimant's cervical spine and right upper extremity. Restrictions related to the left hand and wrist. The claimant may lift 20 pounds with the left hand and wrist. She may push, pull, turn, twist, with a force up to 20 pound [sic] with the left hand and wrist. She may not climb ladders. She cannot restrain uncooperative hostile individuals. She can carry up to 20 pounds with the left hand and wrist 50 feet. She can perform repetitive work with her left upper extremity 20 minutes and then must rest the left hand and wrist for 20 minutes.

T at 431-32.

Dr. Coniglio also found that Plaintiff may require left carpal tunnel release if a cortisone injection did not provide her with relief. T at 432. Additionally, he reported that Plaintiff still had significant weakness in her right hand. Id.

On November 18, 2010, Dr. Ayres treated Plaintiff for continued pain. T at 472. Plaintiff reported that her left wrist had been in pain and that she was concerned about needing neck surgery. Id.

On November 30, 2010, Dr. Setter saw Plaintiff for continued pain and noted that she had 75% impairment in both her shoulder and wrist. T at 517. He recommended that Plaintiff do no "lifting, pushing, or pulling with the right upper extremity whatsoever at the present time." Id.

On January 4, 2011, Dr. Miller submitted a progress report to the Workers' Compensation Board stating that Plaintiff was completely temporarily impaired and could not return to work due to severe pain. T at 532-35.

On January 13, 2011, Dr. Setter saw Plaintiff for post-operative care of her shoulder and wrist. T at 593. He wrote that Plaintiff should not lift, push, or pull with the right upper arm at this time. Id. He stated that while Plaintiff had a 75% impairment in both her

9

shoulder and wrist, both were "better than preoperatively." Id.

On March 14, 2011, Dr. Ayres treated Plaintiff for neck, right shoulder, and right and left wrist difficulties. T at 626. Plaintiff reported some problems with her left hand in "differentiating between hot and cold," and continued pain in her neck. Id. The doctor reported that Plaintiff was completely disabled and "still unable to work." Id.

On April 22, 2011, Dr. Coniglio performed an Independent Medical Examination on Plaintiff. T at 595-604. He noted that Plaintiff's cervical range of motion was as follows: flexion at 20 degrees, extension at 10 degrees with pain, right lateral rotation at 45 degrees with pain, and left lateral rotation at 45 degrees with pain. T at 600. He also noted that Plaintiff had "a Tinel's which begins in the ulnar cubital groove and proceeds down the inside of the forearm . . . she has decreased sensation in both forearms." T at 602. He diagnosed Plaintiff with "multiple level degenerative disc disease cervical spine, symptomatic, with right later C6 and C7 radiculopathy, right greater than left" and "likely bilateral double crush syndrome of the cervical spine and upper extremities." T at 608. He recommended that she continue with physical therapy and noted her work restrictions as follows:

> [Plaintiff] may lift up to 20 pounds occasionally with both arms and arise it from floor to tabletop level occasionally; she can push, pull, turn and twist with a force of 20 pounds, she can do repetitive work for 5 minutes with the [sic] either hand then must rest for 10 minutes; she cannot restrain uncooperative clients; she cannot climb ladders.

Id.

On June 2, 2011, Louis A. Noce, M.D., a surgeon, performed an anterior cervical diskectomy on Plaintiff. T at 643-45. The surgery included a partial "vertebractomy

10

C6-C7," "anterior cervical discectomy and interbody arthrodesis," "anterior plating Orthofix System C6-7," "placement of biomechanical intervertebral device," and "iliac crest bone marrow aspirate." T at 643.

On July 7, 2011, Dr. Setter treated Plaintiff. T at 680. Plaintiff reported that she is still "having some pain and stiffness at nighttime." Id. The doctor noted that Plaintiff had a 75% impairment in her shoulder and her wrist but that "range of motion of her shoulder is near full." Id. He advised under her work status that "no lifting, pushing or pulling" should be done with the right upper arm. Id.

**c.**   **ALJ Analysis**

In determining whether a claimant may receive Social Security Disability benefits and Supplemental Security Income the issue is whether the claimant is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d). An ALJ must determine whether the claimant is disabled by performing a five-step evaluation based on 20 CFR §§ 404.1520 or 416.920. The Supreme Court recognized this test in Bowen v. Yuckert, 428 U.S. 137, 140-42 (1987), and it is still the proper analysis for the determination of a claimant's disability. The five step evaluation process is as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in

11

Appendix 1 of the regulations.  If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the Secretary then determine whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

In this case, the ALJ found that, at Step One, Plaintiff had not engaged in substantial gainful activity since January 29, 2008, the alleged onset date of disability.  T 19.  At Step Two, the ALJ found that Plaintiff's cervical spondylosis, right shoulder impingement, and right wrist injury were severe impairments.  Id.  At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 415.925 and § 416.926).  T 20.  At Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to lift up to five pounds with the right hand, carry that weight up to ten feet, raise that weight from the floor to tabletop level, work with her right arm above shoulder level, and push, pull, turn, and twist with a force of up to ten pounds occasionally.  Id.  She could work repetitively with the right hand or wrist for five minutes, followed by a ten-minute rest.  Id.  The ALJ further found that with her left hand and wrist, Plaintiff could lift up to twenty pounds and push, pull, turn, and twist with a force up to twenty pounds.  Id.  Plaintiff could not, however, climb ladders or restrain uncooperative clients.  Id.

Fourth, the ALJ concluded that Plaintiff could not perform her past relevant work as

a machine operator.  T 23.  Fifth, the ALJ determined, with the assistance of a VE, that

someone of Plaintiff's age, education, work experience, and RFC could perform the

representative occupations of order clerk, ticket taker, and new accounts clerk.  T 23–24,

241-43.  Plaintiff, therefore, did not meet the definition of disability during the relevant

period.  T 24–25.

## II.        STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries.

See 42 U.S.C. § 405(g).  First, the Court determines whether the Commissioner applied

the correct legal standard.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999);

Balsamo v. Charter, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d

Cir. 1990); Shane v. Charter, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y. July 16,

1997) (Pooler, J.) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  Second,

the Court must determine whether the Commissioner's findings are supported by

substantial evidence in the administrative record.  See Trejada, 167 F.3d at 773; Balsamo,

142 F.3d at 79; Cruz, 912 F.2d at 11; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.

1982).  A Commissioner's finding will be deemed conclusive if it is supported by

substantial evidence.  See 42 U.S.C. § 405(g); see also Perez, 77 F.3d at 46; Townley v.

Heckler, 748 F.2d 109, 112 (2d Cir. 1984) ("It is not the function of a reviewing court to

determine de novo whether a claimant is disabled.  The [Commissioner's] findings of fact,

if supported by substantial evidence, are binding.") (emphasis in original) (citations

omitted).  In the context of Social Security cases, substantial evidence consists of "'more

than a mere scintilla'" and is measured by "'such relevant evidence as a reasonable mind

13

might accept as adequate to support a conclusion.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations.  <u>See</u> <u>Quinones v. Charter</u>, 117 F.3d 29, 36 (2d Cir. 1997) (citing <u>Schauer v. Schweiker</u>, 675 F.2d 55, 57 (2d Cir. 1982)); <u>Alston v. Sullivan</u>, 904 F.2d 122, 126 (2d Cir. 1990).  While the reviewing court must give deference to the Commissioner's decision, the Social Security Act is ultimately "'a remedial statute which must be liberally applied; its intent is inclusion rather than exclusion.'" <u>Vargas v. Sullivan</u>, 898 F.2d 293, 296 (2d Cir. 1990) (quoting <u>Rivera v. Schweiker</u>, 717 F.2d 719, 723 (2d Cir. 1983)).

## III.    DISCUSSION

### a.    <u>Medical Opinions</u>

Plaintiff challenges the Commissioner's finding on the ground that the ALJ erred in assigning no weight to the November 30, 2010 opinion of treating orthopedic physician Dr. Setter, and little weight to the November 6, 2009 report of consultative examiner, Dr. Ali. Plaintiff contends that Dr. Setter's opinion is well supported because Dr. Setter is an orthopedic specialist, and he has a treating relationship with Plaintiff.  (Plaintiff's Memorandum in Support of Motion for Judgment on the Pleadings ("Pl. Mem."), dkt. #13 at 13).  Furthermore, Plaintiff contends that his opinion is consistent with Dr. Noce's July 1, 2011 report, in which he stated that Plaintiff had a 75% impairment.  (<u>Id.</u> at 15).  Plaintiff also notes that even though Dr. Setter's opinion is post-operative, he had made the same findings before the surgery occurred and therefore, his opinion is not limited to post-

operative restrictions.  (Id.).  Plaintiff further contends that it was an error for the ALJ to cite Dr. Ali's reliance on Plaintiff's subjective complaints as a basis for assigning his opinion less weight.  (Id. at 16).  Plaintiff argues that a patient's subjective complaints are "an essential diagnostic tool," especially in indicating whether pain treatments are effective.  (Id.).  Furthermore, Plaintiff points out that Dr. Ali also performed a complete physical examination.  (Id.).

Defendant contends that Dr. Setter's findings are not supported by the record. First, Defendant notes that while Dr. Setter reported that Plaintiff could not use her right arm for pulling, pushing, or lifting, Dr. Coniglio reported normal strength in Plaintiff's arm just one month prior to Dr. Setter's report and again upon re-examination on April 22, 2011.  (Defendant's Memorandum in Opposition of Motion for Judgment on the Pleadings ("Def. Mem."), dkt. # 18 at 7, 8).  Moreover, Defendant argues that Dr. Setter's opinion is not supported by Dr. Noce's findings, because Dr. Noce's findings related to Plaintiff's neck, not her shoulder and wrist.  (Id. at 9).  Additionally, Defendant notes that Dr. Setter's report is inconsistent with his own earlier reports in which he noted "great range of motion" in Plaintiff's shoulder.  (Id.).  Defendant also claims that the ALJ was correct in assigning Dr. Ali's opinion little weight because his findings were based on "very few clinical findings and an insufficient review of the medical records, and were also inconsistent with Plaintiff's activities of daily living.  (Id. at 11).

Upon review, the Court finds no error.  The ALJ afforded Dr. Setter's opinion "no weight" because it had "no probative value as far as longer-term restrictions," because he conducted his report shortly after Plaintiff's shoulder operation.  T 22.  The ALJ further

noted that Plaintiff had another surgery after Dr. Setter's evaluation, and "[a]ny restrictions from that surgery would be expected to resolve in less than 12 months." T 23. "[W]hile an ALJ must consider the data provided by a physician as to the nature and severity of an applicant's impairments, the legal determination of an applicant's RFC is reserved to the Commissioner." Rice v. Barnhart, 127 F. App'x 524, 526 (2d Cir. 2005) (citing 20 C.F.R. § 404.1527(d)(2), (e)(2)). "The ALJ is bound to give the treating physician's opinion controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." Id. (citing 20 C.F.R. § 404.1527(d)(2); Rosa v. Callahan, 168 F.3d 72, 78–79 (2d Cir.1999)); see also 20 C.F.R. §§ 404.1527(c)(2), (4), 416.927(c)(2), (4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). Here, Dr. Setter's opinion contradicts with other substantial evidence in the record, including his own reports, Dr. Coniglio's reports, Plaintiff's testimony, and Plaintiff's daily activities. T 19, 21, 52, 593. Therefore, the ALJ did not err in affording his opinion no weight.

Additionally, Dr. Ali's opinion of Plaintiff's limitations is not supported by sufficient medical evidence. In determining that Plaintiff should "avoid zipping, buttoning, and typing shoes with her right hand," and "avoid activities like computer work," Dr. Ali apparently relied on Plaintiff's subjective complaints of having difficulty such activities because he supplied few clinical findings, and an insufficient review of the medical record. T 22; see 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings,

the more weight we will give that opinion.").

Furthermore, Dr. Ali's report was inconsistent with Plaintiff's daily activities.  Id.; see also 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").  While Plaintiff reported difficulty with buttons, zipping, and tying with the right hand, Dr. Ali found her to have only "slightly weak grip strength on the right side" and "no motor or sensory deficit."  T 297, 299.  Furthermore, during her testimony at the ALJ hearing, Plaintiff stated that her right arm was doing "[a] lot better" since the surgery, that she had no difficulties in dressing herself, and that she could use a computer for twenty minutes at a time.  T 21, 52, 55, 60–61.  The ALJ noted that Plaintiff's habit of smoking 1-2 packs of cigarettes a day demonstrates her ability to manipulate small objects.  T 22.  The Court therefore finds that the ALJ's decision to afford no weight and  little weight to the opinions of Dr. Setter and Dr. Ali, respectfully, is supported by substantial evidence.

**b.    Credibility of Plaintiff's Testimony**

Plaintiff next challenges the Commissioner's finding on the ground that the ALJ erred in evaluating the credibility of Plaintiff's subjective complaints.  Plaintiff argues that the ALJ improperly discounted her testimony regarding her ability to drive and turn her head.  (Pl. Mem. at 18).  Plaintiff maintains that her testimony was consistent despite the fact that she stated that she cannot drive, but then admitted she drove only four days prior to the hearing.  (Id.).  Plaintiff claims that her function report explains the discrepancy as she stated in it that she can drive only if she has "someone with [her] to watch," because she cannot turn her head.  (Id.).  Defendant, however, contends that the ALJ properly

considered Plaintiff's testimony and correctly decided not to fully credit her subjective complaints because the complaints were inconsistent with the other evidence of record. (Def. Mem. at 14).

In determining a petitioner's ability to do basic work activities, the ALJ considers a petitioner's subjective symptoms, as well as the extent to which the symptoms "can reasonably be accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). However, "[n]o symptom or combination of symptoms can be the basis for a finding of disability . . . unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); see also id. at §§ 404.1529(b), 416.929(b). Only then will the ALJ "evaluate the intensity and persistence of [the] symptoms so that [he] can determine how [the] symptoms limit [the petitioner's] capacity for work." 20 C.F.R. §§ 404.1529(c)(1)-(2), 416.929(c)(1)-(2). If the symptoms "suggest a greater severity of impairment than can be shown by objective medical evidence alone," the ALJ will carefully consider other information in the record, such as "how the symptoms may affect [the petitioner's] pattern of daily living." Id. at §§ 404.1529(c)(3), 416.929(c)(3); ); see also SSR 96-7p, 1996 WL 374186, at *3.

Here, the ALJ decided not to fully credit Plaintiff's subjective complaints. T at 21. Where Plaintiff's complaints suggested limitations more severe than those in the RFC assessment, the ALJ found them not to be credible. Id. Upon review, the Court finds no error. There is substantial evidence that Plaintiff's claim that she cannot turn her head

due to neck pain lacked credibility, since her statement regarding her ability to drive undermined it.  Furthermore, her statement that she is in constant pain is not consistent with the record as she admitted to performing regular errands on a daily basis and to feeling better since the surgeries.  Id. (citing T at 201).  As such, the Court finds that the ALJ's determination that Plaintiff's statements in these regards were not entirely credible, is supported by the record.

### c.     Residual Functional Capacity

Plaintiff challenges the Commissioner's finding on the ground that the ALJ erred concerning the Plaintiff's residual functional capacity ("RFC").  Plaintiff argues that the ALJ erred by relying on an incomplete hypothetical in determining that Plaintiff could perform jobs in the national economy.  (Pl. Mem. 19).

The ALJ posed a hypothetical limitation to the VE and asked the expert to identify occupations Plaintiff would be able to perform with her limitations.  T at 241–42.  The hypothetical individual, which the ALJ adopted as Plaintiff's RFC, had a ninth grade education, no GED, had completed an FTD course in floral design, and has work experience as a machine operator.  Id.  Furthermore, with her right hand, she can lift up to five pounds and raise that weight from floor to tabletop level, but she cannot carry it further than ten feet. T at 431.  She cannot work with the right arm above shoulder level, but she can push, pull, turn, and twist with a force of up to ten pounds occasionally with the right arm.  Id.  She can do repetitive work for approximately five minutes with the right hand or wrist, but she must rest afterwards for ten minutes.  Id.  She cannot restrain uncooperative clients, or climb ladders.  Id.  With her left hand and wrist, she can lift and carry up to

twenty pounds for fifty feet, and can push, pull, turn, and twist with a force up to twenty pounds. T at 431–32. Additionally, she can perform repetitive work with her left arm for twenty minutes, but she must rest afterwards for twenty minutes. T at 432.

In adopting this hypothetical as Plaintiff's RFC, the ALJ considered Plaintiff's symptoms and "the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . [and] also considered opinion evidence." T at 20. Plaintiff challenges the ALJ's determination and argues that all lifting, pushing and pulling with her right upper arm was precluded by her RFC. (Pl. Mem. at 20). Furthermore, she argues that all work should be precluded by her need to rest for at least three hours during the workday. Id.

Plaintiff relies on Dr. Setter's medical opinion and argues that "the VE should have been presented with a hypothetical with [sic] included this limitation." Id. In relation to her need for bed rest, she presents no evidence aside from her own testimony that she needs to lie down for at least three hours a day, from 11:00 a.m. until 2:00 p.m., to give her "neck muscles a rest." T at 59. Plaintiff relies on an exchange that occurred during a hearing before the ALJ, in which the Plaintiff's attorney asked the VE what occupations a hypothetical individual would be able to perform if she needed a fifteen minute break from work each hour. T at 39. The VE responded that such a restriction would prevent an individual from maintaining employment. Id. However, the ALJ did not include this limitation in her hypothetical because it was not supported by the record. The ALJ only included the limitation that Plaintiff would need ten minute breaks after five minutes of repetitive work with her right arm, and twenty minute breaks after twenty minutes of

repetitive work with her left arm.  T at 38.  In accounting for all of Plaintiff's limitations, the

VE concluded that Plaintiff could perform such unskilled occupations as an order clerk,

ticket taker, and new accounts clerk.  T at 24.  The VE testified that these positions

account for Plaintiff's RFC as they do not involve any repetitive performance.  T at 38.

Upon review, the Court finds no error.  The ALJ had adequate evidence concerning

Plaintiff's ability to work.  Plaintiff previously worked in various occupations and is able to

adjust to other work that exists in significant numbers in the national economy.  T at 24.

The conclusions in the consultative reports were consistent with one another and the other

available medical evidence.  While Dr. Setter stated that Plaintiff could do no lifting,

pushing or pulling with her right arm, the ALJ correctly determined his opinion to be of no

value, as discussed above.  Additionally, while Dr. Ali stated that Plaintiff should avoid

activities like computer work, and zipping, buttoning and tying shoes with her right hand,

the ALJ correctly discounted his opinion, as also discussed above.  Furthermore, while Dr.

Sportelli stated that Plaintiff can only sit for three hours in a workday, and can only stand

for three hours in a workday, the ALJ concluded that his assessment was entitled to little

weight as he saw Plaintiff prior to all of her surgeries.  T at 23.  Moreover, his assessment

was based on a less thorough examination than the one performed by Dr. Coniglio.  Id.

In any event, the other examining physicians found Plaintiff to have increasingly normal

strength, range of motion, and reflexes in her upper extremities since her surgeries.  T at

325, 427–30.  Such findings are consistent with an ability to do light work.

The ALJ considered the opinions of Dr. Coniglio since he had the opportunity to

review all of Plaintiff's records and his findings were consistent with the objective evidence

in the record.  T at 21–22.  The ALJ also gave some weight to the opinions of Dr. Ferrarccio, Dr. Ali and Dr. Sportelli.  T at 22.  In considering the physicians' conclusions that Plaintiff was able to perform light work, Plaintiff's improvements since her two surgeries, and Plaintiff's own testimony regarding her daily activities, the ALJ found that Plaintiff's RFC was supported by the objective evidence. T at 23.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence.  Therefore, Plaintiff's motion for judgment on the pleadings is DENIED.

**IT IS SO ORDERED.**

Dated: July 23, 2014

Thomas J. McAvoy
Senior, U.S. District Judge